Eleanor McCullough, V. U. S. Attty General Customary Service Stephanie Potter, V. O. S. Attty General Customary Service May it please the Court, my name is Stephanie Potter and I'm here on behalf of Jose Nelson Cruz, the appellant in this case, and his 11-year-old son, Stephen. Mr. Cruz served as a Salvadoran national police officer for 10 years until he and his son were subjected to repeated threats, including death threats, by the Body 018 gang in El Salvador. After that, they fled the country and requested asylum. So we're here today to discuss errors that the board made in reviewing the immigration judge's determinations in this matter. The briefing sets out many, but there are two that I would like to focus on today. The first error was that the Board of Immigration Appeals incorrectly applied a clear error standard of review to the immigration judge's legal finding with respect to the past persecution. So, Mr. Cruz and... Do you agree that that's a fact question? No, not in this case. So, in this case, Mr. Cruz provided corroborated, uncontroverted, and credible testimony regarding the threats that he experienced. And so, in this narrow set of facts, there were no fact questions about the threats that he experienced. What remained was the legal question of whether or not those threats constituted persecution under the law. In a similar case in 2017, in the Morales case, this court decided that whether a prior assault rose to the level of persecution was a legal question subject to de novo review. And here, similarly, whether these threats rose to the level of persecution was a legal question that should have been subject to de novo review. Instead, the board applied clear error review to that legal question. The second independent error I would like to discuss is the impermissibly high legal standard. Well, in the Tesfamichael case, which is often cited and which I wrote, it's been around 13 years, we said that past persecution is a question of fact. I think that case is the most often cited for that proposition. Feel free to correct me if I'm wrong, but it's certainly never been overruled or questioned. It has not been overruled. The Tesfamichael case holds that the broader question of whether or not an asylum applicant establishes their asylum claim is a question of fact. And in most cases, there will be fact questions. But the Tesfamichael case also recites the typical standard of review before this court that legal questions are subject to de novo review, while fact questions are subject to either clear error or substantial evidence review. So that same standard that's well established in the Fifth Circuit and cited in myriad cases, including Tesfamichael, Edouard, Majd, many others, is recited in Tesfamichael as well. And so I believe it is perhaps the rare case like this one where there are no fact questions about the harms that were suffered. And the only question on past persecution is whether or not those harms constituted persecution of the law. But I believe that those are the narrow facts that are presented here. The second error I hope to discuss is the impermissibly high legal standard of proof that the board applied to their analysis of Mr. Cruz's ability to internally relocate in the country and how that impacted their well-founded fear analysis. So the board required Mr. Cruz to prove that he would have continued to be targeted for harm had he attempted to relocate within El Salvador, which, as we know, is a very small country. That's not the burden. That's an impossible burden to prove. No person could prove the harm that might be suffered in the future. The actual burden is to prove that internal relocation would have been unreasonable or intolerable. And this court has remanded cases, even in the face of an adverse past persecution finding, for applying that impermissibly high standard of proof before. For purposes of asylum, what protected class is Mr. Cruz a member of? He's asserted both at the time that he was initially threatened. He was an active member of the National Police Force. He's also asserted that he's a former police officer now. Two of the three threats that he experienced occurred after he had taken a leave of absence from the force, and he certainly fits into the former police officer category at this time. The board did not address the particular social group or nexus. They focused their inquiry on past persecution and the internal relocation aspects of well-founded fear. So with respect to past persecution, as we've discussed, the general standard in the well-established law in the Fifth Circuit is that legal determinations to review de novo and fact determinations are subject to clear error review. As I said, the Morales case specifically applied that de novo review to the legal question of whether a past event was constituted persecution under the law. You agree that I hope that the panel in Morales was bound to follow prior Fifth Circuit laws such that if Morales is an outlier, it wouldn't be within our correct line of binding precedent today. I don't believe that Morales is an outlier. I believe that they adopt the typical rule that de novo review applies to legal questions. The government cited cases that generally say that fact questions are subject to de novo review. They have not—I'm sorry, that fact questions are subject to clear error review. They haven't cited any cases that say that in the absence of any fact question, clear error review should have been applied by the board. And so I think that's the distinction here. We have a unique set of facts in this case. And that deference that the board gave to the immigration judge's legal findings was important here because the board was then able to adopt the immigration judge's findings that the threats that my client experienced didn't constitute persecution because they weren't accompanied by physical harm. But that's not required under the law. This Court has ruled in Testa-Michael and Edouard both that threats without physical harm can constitute persecution. And here I believe they do because you couldn't possibly conceive of verbal threats being any more extreme than these were. These were repeated threats that were escalating. Each threat got a bit more extreme. There were only three threats, is that right? Correct. There were three separate incidents that were at issue. In the last threat, a purported gang leader called my client on his personal cell phone and said he'd already given the green light to kill him and would kill his son as well if he didn't get out of here. And with that threat and given my client's experience in the country as a police officer and what he'd seen, that made him afraid enough to flee. His former police partner had been threatened by the Body of 18 a year before, and he did not flee and two months later was gunned down on his way home. And so that event certainly colored my client's perception of how serious these threats were. With regard to the internal relocation analysis, which is really where the board sort of began and ended its well-founded fear analysis, the board held that Mr. Cruz did not submit evidence that he would continue to have been targeted for harm had he relocated. That is an impermissibly high standard. Mr. Cruz does not have to prove that he would continue to be persecuted if he relocated. He has to prove to a reasonable degree that return would be intolerable. The regulations provide for a multifaceted review of what constitutes a reasonable ability to relocate. Harm is certainly one consideration, but strife and country conditions are another. The administrative and economic conditions in the country are issues as well. And so they're supposed to conduct this complex reasonableness analysis. They're not supposed to require an asylum applicant to prove that they would continue to be persecuted, because that's an element that nobody could do. You can't prove what will happen in the future. Had they applied that correct reasonableness standard, then I believe there's compelling evidence in the record and undisputed evidence that relocation wasn't an option in this case. So this is a case of death threats where the stakes are very high. Had Mr. Cruz attempted to relocate and been wrong, he or his then 8-year-old child would have been murdered. And so what a reasonable person would do in this country is exactly what he would do. Well, what the BIA said about that is that Cruz, quote, did not testify that the gang made countrywide threats against him. Rather, he reported that they did not want him to be in the same area as they occupied. From that statement, it would be reasonable to infer that the threats would not apply to other areas except the areas that the gang occupied. And there's undisputed record evidence that the gang occupied the entire country. So the Body of 18 is a transnational gang that operates throughout El Salvador. Mr. Cruz provided hundreds of pages of evidence on country conditions, including evidence about the Body of 18 gang that explain that they operate with impunity throughout the country, that up to 90 percent of El Salvador is under the de facto control of the gangs, and that there's no governmental support for those that attempt to relocate in-country. I think El Salvador's small size is pertinent to a death threat case as well. So El Salvador, lengthwise, is less than 200 miles long. It would fit between Austin and Dallas. And Mr. Cruz lived in Zacateca Luca, which is the middle of the country. So he testified that by bus he couldn't get more than 2 1⁄2 hours away from his hometown. So while the geographic breadth of the specific threats was not well defined, had he wanted to interpret that narrowly and not go too far away, he just didn't have an option in-country to get very far away. And when his child's life was threatened by a gang that, in his experience, carried out their threats, there's certainly evidence that a reasonable person would not have attempted to relocate internally. You can bet if one of my children were threatened, I would not relocate to Waco. I would go farther than that. And so I think all of that is pertinent. I believe that had the board applied the proper review of reasonableness rather than impossibility, which was the standard that they applied, that they would have found that Mr. Cruz met his legal burden and that the evidence really compels that finding in this situation. This court has remanded for such errors in the past. In the Edouard case, it ruled that unreasonable does not mean not necessary, that that is an erroneous heightened standard of proof. And even in the face of an adverse past persecution finding, this court remanded for analysis of well-founded fear in Edouard. Similarly, in the McHale case, the court remanded so that the board could correctly analyze whether an applicant had a well-founded fear of future persecution. In both of those cases, that remand happened even with an adverse past persecution finding. Edouard was similarly a threat case, but the threats there were not so extreme. They were not death threats. They were merely harassment, and even then, the court remanded in that case. So here, I believe that the heightened standard of proof applied to the internal relocation analysis warrants remand separate and independent from the prior error we discussed with respect to standard of review. Thank you. You saved time for rebuttal, Ms. Potter. Thank you. Mr. Glover. Thank you. May it please the court, I'm Matthew Glover. I'm here on behalf of the respondent, the Attorney General. This court should deny the petition for review because there was substantial evidence to support both of the board's conclusions that Petitioner failed to show he suffered past persecution and that he failed to show it was unreasonable for him to relocate within El Salvador. In addition, the court should deny the petition to reopen and petition for reconsideration because the board did not abuse its discretion there. I'll start with the standard of review. Judge Smith, as you pointed out, test for Michael predates Morales and does establish that the standard of review in this court is for substantial evidence because it's a mixed question. And so we think Morales, I believe you described it as an outlier. We think it's an outlier. And, in fact, if you look at the nine times that this Court has cited Morales since it was handed down, in a few of those, in none of them does it cite it for the de novo standard, but in a few of them it cites the substantial evidence standard earlier in the case and later cites Morales for a substantive point not related to the standard of review. So I wasn't able to find any cases following Morales or suggesting that Morales somehow created a narrow exception to the substantial evidence prong. And, actually, to the standard of review that the board would apply to the IJ, as we explain in our supplemental brief at 15 and 16, this is a mixed question that looks a lot like a factual question. My friend on the other side points to 8 CFR 1003.1D suggesting that de novo review was required. But if you actually look at that provision, it's got two sub-prongs. The first sub-prong says the board will not apply de novo review to factual questions and then specifically states that credibility determination is a factual question. So that sub-prong is jurisdiction or not jurisdiction stripping, excuse me. It's discretion stripping. The second sub-prong, on which my friend relies, merely states that the board may apply de novo review to other judgments or administrative things or legal questions. So there's no law or regulation requiring that the board apply de novo review. And as explained in our supplemental brief and citing the Supreme Court's description in Village of Lake Ridge for what constitutes a mixed question that's very factual, this is a mixed question that's very factual, and thus the clear error standard was that it's appropriate for the board to apply to the IJ, and it's appropriate to be applied here. I'd just like to point to a couple of spots in the record on evidence of past persecution and evidence of the credible fear of future persecution. In the record at 529, Ms. Kennedy's — there's a Ms. Elizabeth Kennedy that Petitioner has put in her declaration. She states that there were other police officers in El Salvador who were transferred when gangs threatened them and their families for extortion or murder, so including death threats. And those police officers continued to serve. And she states on page 529 as well that it was, quote, standard for officers covering crime and homicide to relocate annually and biannually. And I think this is record evidence that supports the board's conclusion that the threats here did not rise to persecution, but also supports the board's conclusion that it would be reasonable to relocate internally. As we explain in our brief, there are a number of cases in this circuit and elsewhere stating that you typically need more than threats alone. You need some indicia that the threats are going to be carried out. Here we had three independent threats. I'm happy to answer any questions the Court has, but I'm also happy to rest on our briefs. And I guess I would, before I rest, say my friend on the other side suggested that we didn't cite any cases that's — in which the Court applied substantial evidence standard to the determination about whether past persecution occurred. Sharma v. Holder is cited in our opening brief at 13, and it's 729F3407 at page 411. So, you know, otherwise, I'm happy to rest on our briefs if you don't have any questions. Yes, you haven't waived anything that's in your brief. Thank you, Mr. Glover. Ms. Potter, you've saved time for rebuttal. Yes, Your Honors. First, the government argued that the regulation that — regarding de novo review of legal questions is discretionary. However, in this case, the Board interpreted that regulation to say that it would apply de novo review to questions of law judgment and fact, and the Board is entitled to deference on its interpretation of regulations. As I've said, there's also just dozens of Fifth Circuit cases that recite the standard that says that legal determinations are reviewed de novo. The government also said — they quoted me as arguing that I — that they did not cite any cases that applied the substantial evidence standard to past persecution findings. That is not my argument. I recognize that there are cases that have applied substantial evidence to past persecution findings, because in many cases, that is a factual question. I believe that on the narrow facts before us, where we have credible, uncontroverted testimony about the discrete threats that give rise to the past persecution finding, in this situation, there is no fact question, and in this situation, de novo review applies. The government also cited an excerpt from my expert affidavit that was part of the record regarding certain police officers that relocate annually and biannually to remain safe within El Salvador. There's no evidence that those police officers were threatened. What my client experienced, he testified, was somewhat unique. Certainly, there is some practice of targeting police officers in El Salvador, but my client testified that the direct threats that he received were relatively unique. In his department, it was certainly common to experience threats in the course of your police work. You might hear that a gang had threatened you from an informant. But what my client experienced was threats that really followed him home. The gang threatened him when he was off duty, when he was in a nearby town with his family. They brandished a weapon in front of his eight-year-old son. They somehow found his personal cell phone number. They came to his home. So this is not a typical case of a police officer experiencing casual threats in the course of duty. He was personally targeted because of his profession. That's pertinent because without evidence that other police officers that were targeted like that were able to successfully internally relocate, that really doesn't rebut our arguments on internal relocation. The government also said that more than threats are typically necessary to establish persecution. I don't disagree with that. In a typical case, it is difficult for threats to rise to the level of persecution. There were more than threats here. So we do have these three targeted threats. But on top of that, we have an actual physical act where a similarly situated actor, a police officer, was threatened in very much the same manner and murdered the previous year. So we have more than threats here. The threats that occurred here simply far exceed the threat cases cited by the government that were mere taunting or harassment. And with that, I'm happy to answer any other questions you may have. All right. Thank you, Ms. Potter. The case is under submission.